# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF MASSACHUSETTS, by its
EXECUTIVE OFFICE OF HEALTH AND
HUMAN SERVICES,
           Plaintiff,

    v.

MICHAEL O. LEAVITT, in his official capacity as
Secretary of Health and Human Services of the United States;
KERRY N. WEEMS, in his official capacity as Acting
Administrator of the Centers for Medicare and Medicaid
Services; NATIONAL GOVERNMENT SERVICES, INC.;
and MAXIMUS FEDERAL SERVICES, INC.,
           Defendants.

Civil Action No. 07-

## VERIFIED COMPLAINT

### Introduction.

1.    This case arises from Defendants' unlawful refusal to allow the Commonwealth of Massachusetts, acting through the state agency (currently the Massachusetts Executive Office of Health and Human Services, or "EOHHS") that administers the Massachusetts Medicaid program ("MassHealth"), to seek reimbursement from the federal Medicare program. In particular, Defendants have unlawfully barred EOHHS from seeking Medicare reimbursement in cases where (i) MassHealth paid for medical assistance to an individual who was eligible for Medicaid but at the time not also eligible for Medicare, and (ii) Medicare subsequently grants the individual retroactive eligibility, as a result of which Medicare covers a service already paid for by MassHealth. In such cases, Medicare is liable for the costs of the service previously paid for by Medicaid, and the only way for the Commonwealth's MassHealth program to obtain the reimbursement to which it is legally entitled is to seek it directly from Medicare.

2.     Defendants denied four test claims submitted by EOHHS seeking reimbursement from Medicare for medical assistance already provided by MassHealth.  Defendants improperly and unlawfully denied these four claims on the ground that EOHHS may not ever request reimbursement from Medicare because EOHHS is "not a participating provider."  That denial was arbitrary, capricious, and inconsistent with the provisions of the federal Medicaid statute that establish Medicaid as the payor of last resort, and require Medicaid to seek and obtain reimbursement where Medicare or other insurers are liable.

3.     More generally, there is an actual controversy between the Commonwealth of Massachusetts and Defendants regarding whether MassHealth may file claims for reimbursement with Medicare, even though MassHealth is not a "provider" of medical assistance within the meaning of the federal Medicare statute.  Defendants' insistence that MassHealth may not ever file such claims is unlawful.

**Jurisdiction and Venue.**

4.     This action arises under the federal Medicare statute (see Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq.) and the federal Medicaid statute (see Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq.).  This court has jurisdiction of the subject matter of this action under 28 U.S.C. § 1346(a)(2) (United States as defendant), 28 U.S.C. § 1331 (federal question jurisdiction), and 5 U.S.C. § 702 (Administrative Procedure Act).  Declaratory relief is proper under 28 U.S.C. § 2201.  Venue is proper in this district under 28 U.S.C. § 1391(e) and 5 U.S.C. §703.

**Parties.**

5.     The Commonwealth of Massachusetts is a sovereign state of the United States.  EOHHS is the single state agency that administers the Massachusetts Medicaid program, which is known as MassHealth.

6.     Michael O. Leavitt is the Secretary of Health and Human Services for the United States.  He has statutory responsibility for administering the federal Medicaid and Medicare programs.  Secretary Leavitt is sued solely in his official capacity.

7.     Kerry N. Weems is Acting Administrator of the federal Centers for Medicare and Medicaid Services (known as "CMS").  CMS is a division of the United States Department of Health and Human Services ("HHS").  CMS is responsible for, among other things, administering the federal Medicare and Medicaid programs.  CMS was previously known as the Health Care Financing Administration ("HCFA").  Acting Administrator Weems is sued solely in his official capacity.

8.     National Government Services, Inc. ("NGS") is the "fiscal intermediary" hired by CMS to process and in the first instance decide Medicare Part A reimbursement claims arising within Massachusetts.  NGS does business at 1515 Hancock Street, Quincy, MA  02169.  Its mailing address is P.O. Box 919, Portland, ME  04104-0919.  Prior to January 1, 2007, NGS did business in Massachusetts under the name Associated Hospital Service, Inc. ("AHS").

9.     MAXIMUS Federal Services, Inc. ("MFS") is the "qualified independent contractor" hired by CMS to conduct and decide so-called "second-level" appeals of Medicare Part A reimbursement claims arising within Massachusetts.  MFS does business at 1040 First Avenue, Suite 400, King of Prussia, PA  19406.

**Factual Background.**

## Medicaid is the "Payor of Last Resort," and Thus Medicare Must Pay In Cases of Dual Eligibility.

10.     Medicaid is a joint federal-state program that provides medical assistance to low-income individuals under the federal Medicaid statute.  See Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq.  The Federal government provides part of the funding, through what is known as federal financial participation, for Medicaid programs administered by each State.  In

Massachusetts, the Medicaid program is known as MassHealth and is administered by EOHHS pursuant to Mass. G.L. c. 118E, § 1, et seq.

11.     Medicare is the federal government's health-insurance program for people age 65 and over, people under age 65 who have certain disabilities, and people of all ages with end-stage renal disease (permanent kidney failure). See Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq.  Medicare Part A provides hospital insurance coverage for inpatient care in hospitals and skilled nursing facilities (excluding custodial or long-term care).  Medicare Part B provides supplementary medical insurance coverage for doctors' services and outpatient care.

12.     "Congress, in crafting the Medicaid legislation, intended that Medicaid be a 'payer of last resort.'"  Arkansas Dept. of Health and Human Services v. Ahlborn, 547 U.S. 268, 291, 126 S.Ct. 1752, 1767 (2006) (quoting S.Rep. No. 99-146, p. 313 (1985)).  As CMS has explained (back when it was still known as HCFA), the fact that "[t]he [Medicaid] program by law is intended to be the payor of last resort" means that "other available third party resources must be used before the Medicaid program pays for the care of an individual eligible for Medicaid."  Medicaid Programs; State Plan Requirements and Other Provisions Relating to State Third Party Liability Programs, 55 Fed. Reg. 1423, 1424-25 (1990).

13.     State Medicaid agencies must "take all reasonable measures to ascertain the legal liability of third parties," including Medicare and other health insurers, "to pay for care and services" that would otherwise be paid by Medicaid.  42 U.S.C. § 1396a(a)(25)(A).

14.     MassHealth is further required by federal statute to "seek reimbursement" from any third party, including Medicare, where the third party's legal liability to pay for care and services "is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery."  42 U.S.C. § 1396a(a)(25)(B).

15.     CMS has emphasized that for purposes of the third party liability provisions of the Medicaid statute, which are codified as 42 U.S.C. § 1396a(a)(25), "[a] third party is <u>any</u> individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State [Medicaid] plan." <u>Medicaid Programs; State Plan Requirements and Other Provisions Relating to State Third Party Liability Programs</u>, 55 Fed. Reg. at 1425 (emphasis added); <u>accord</u> 42 C.F.R. § 433.304.  For these purposes, Medicare is a third party that may be liable to pay for medical assistance that would otherwise be the responsibility of Medicaid.  <u>Id.</u> at 1428; <u>accord</u>, <u>e.g.</u>, <u>New York State Dept. of Social Services v. Bowen</u>, 846 F.2d 129, 133-134 (2nd Cir. 1988) ("<u>NYDSS</u>").

16.     CMS's regulations set forth and require state Medicaid agencies to follow two methods for dealing with third-party liability for medical care and services that would otherwise be covered by a state Medicaid program.  <u>See</u> 42 C.F.R. § 433.139(a)(2).  First, where probable third-party liability is established at the time that a claim for payment is filed with Medicaid, the state Medicaid agency, except in very limited circumstances, "must reject the claim and return it to the provider," e.g. the hospital or the physician, for a determination of such third-party liability.  <u>See</u> 42 C.F.R. § 433.139(b)(1).  This is what CMS refers to as "cost avoidance." Second, where a state Medicaid agency does not learn of the existence of a liable third party until after Medicaid has already paid the claim, or benefits do not become available from a third party until after Medicaid has already paid the claim, the state Medicaid agency must seek reimbursement from the third party unless the agency determines that recovery would not be cost effective.  <u>See</u> 42 C.F.R. § 433.139(d).  This is what CMS refers to as "pay and recover later" or "pay and chase."  As noted above, the obligation to seek reimbursement in a "pay and chase" situation is imposed by statute, and applies in all cases where "the legal liability of third parties,"

including Medicare, is found to exist after Medicaid has already paid for the care and services. 42 U.S.C. § 1396a(a)(25)(A) & (B).

17.     Some persons are eligible for Medicare because of their age or disability, and are also eligible for some form of Medicaid benefit (e.g., for help paying out-of-pocket medical expenses not covered by Medicare) because of their limited income.  They are referred to by CMS as "dual eligibles."

18.     When such dual eligibility occurs, federal law requires that Medicare, not Medicaid, bear the cost of the covered medical care, because Medicaid is designed to be the payor of last resort.  See, e.g., Connecticut Dept. of Social Services v. Leavitt, 428 F.3d 138, 141 (2nd Cir. 2005); Schott v. Olszewski, 401 F.3d 682, 690 (6th Cir. 2005).  In the case of dual eligibility, Medicare has primary responsibility to pay for medical care and services, and Medicaid may only pay for care and services not covered by Medicare.  As CMS has explained: "Medicaid is the payor of last resort.  Therefore, when an individual is entitled to Medicare and eligible for Medicaid, Medicare, like any other third party, is the primary payor," and Medicaid may only pay a claim "to the extent that payment allowed under the applicable payment schedule . . . exceeds the amount of Medicare's payment."  Medicaid Programs; State Plan Requirements and Other Provisions Relating to State Third Party Liability Programs, 55 Fed. Reg. at 1428 (emphasis added).

19.     Individuals may become retroactively eligible for Medicare Part A coverage.  For example, an individual over the age of 65 who does not sign up for Medicare Part A coverage or social security benefits until some time after they turn 65 years old can automatically get retroactive Part A coverage for up to six months.  For another example, an individual may appeal from the denial of Medicare Part A eligibility on the basis of a disability, and if she eventually prevails be awarded retroactive coverage.

20.     Where dual eligibility for both Medicare and Medicaid is known to exist before MassHealth pays a claim, EOHHS may practice cost avoidance to ensure that Medicare pays for all services that it covers.  For example, if a hospital submits a claim to MassHealth for services provided to an individual who has Medicare Part A coverage, MassHealth will reject the claim and require the hospital first to seek reimbursement from Medicare.

21.     However, where MassHealth pays a claim for services provided by a hospital to a Medicaid-eligible patient who was not also eligible for Medicare when the services were provided, and thereafter CMS grants the patient retroactive eligibility for Medicare Part A coverage that applies to the hospital services already paid for by MassHealth, EOHHS must engage in "pay and chase" and seek reimbursement from Medicare.  As discussed below, the Massachusetts Supreme Judicial Court has held that the federal Medicaid law requires that under these circumstances MassHealth must seek reimbursement directly from Medicare, and may not compel the provider to repay MassHealth and seek its own payment from Medicare.  See Atlanticare Medical Center v. Comm'r of Div. of Medical Assistance, 439 Mass. 1, 6-15 (2003); accord Petition of Maxi Drug, 154 N.H. 651, 657-662, 915 A.2d 480, 484-488 (2006).

**There Is an Actual Controversy As to Whether State Medicaid Programs May Seek and Obtain Reimbursement from Medicare Under the "Pay and Chase" System Mandated by the Medicaid Regulations.**

22.     The Defendants have repeatedly refused to allow EOHHS to seek reimbursement directly from Medicare, even where eligibility for Medicare Part A coverage was not established until after MassHealth already paid a claim submitted by a hospital, and thus EOHHS was required by federal Medicaid law to engage in "pay and chase" by seeking reimbursement from Medicare.  Defendants' refusal to allow EOHHS to submit reimbursement claims to Medicare under such circumstances violates federal law.

23.     In March 1991, HCFA (as CMS was then known) informed the Commonwealth of Massachusetts that "a State Medicaid agency . . . may not submit initial claims for Part A Medicare services, as these claims must be filed by the provider" (i.e., by the hospital or skilled nursing facility).  HCFA stated that its regulations "require the provider to file the initial claim." These statements were set forth in a letter dated March 1, 1991, that was sent by HCFA's Associate Regional Administrator to the Office of the Attorney General for the Commonwealth of Massachusetts.  A true and accurate copy of this letter is attached hereto as <u>Exhibit A</u>.

24.     Consistent with this guidance from HCFA, for years EOHHS required providers to repay the Commonwealth's Medicaid program and to seek payment instead from Medicare in cases where retroactive eligibility for Medicare coverage was established after Medicaid had already paid for the covered services.

25.     On March 20, 2003, however, the Massachusetts Supreme Judicial Court (the "SJC") held that the federal Medicaid statute bars EOHHS from requiring providers to return Medicaid payments in the event that a liable third party is identified after MassHealth has paid the provider for the services.  <u>Atlanticare</u>, 439 Mass. at 6-15.  The SJC held that in such circumstances federal law requires State Medicaid agencies to seek reimbursement from a liable third party using the "pay and chase" model, and bars the Commonwealth from requiring private health care providers to pursue such reimbursement on the Commonwealth's behalf.  <u>Id.</u>  The SJC considered and rejected the Commonwealth's argument that, according to HCFA's 1991 letter, the Commonwealth may not seek and obtain reimbursement from Medicare.  <u>Id.</u>, 439 Mass. at 11-15.  The court held that HCFA's position cannot be squared with applicable federal law.  <u>Id.</u>

26.     Three weeks later, on April 8, 2003, CMS issued State Medicaid Director Letter ("SMDL") #03-004.  In the letter, CMS first stated that if a State "Medicaid agency learns of the

existence of a liable third party after a claim is paid, or benefits become available from a third party after the claim is paid, you must seek recovery from that third party."  CMS further stated in the letter that – contrary to the holding by the SJC – "[w]hen that third party is Medicare, neither the Medicare nor Medicaid statute, nor HHS's regulations or policies prohibits any state from recouping its Medicaid payment from providers" where the State Medicaid agency "timely requests the provider to file a claim with Medicaid and the provider fails to submit timely a complete claim to Medicare for the service at issue."  A true and accurate copy of SMDL #03-004 is attached hereto as Exhibit B.

27.    On May 22, 2003, EOHHS wrote to CMS seeking clarification of SMDL #03-004.  A true and accurate copy of the letter dated May 22, 2003, that was sent by EOHHS to CMS's Acting Associate Regional Administrator is attached hereto as Exhibit C.

28.    While awaiting a response from CMS, on September 15, 2003, EOHHS asked CMS's fiscal intermediary in this region to "establish EOHHS as a qualifying billing entity" so that it could submit claims for Medicare reimbursement in cases "where claims were originally paid by the MassHealth program, but it was later discovered that the member had Medicare as primary health insurance coverage during the applicable dates of service."  This request was in accord with SJC's Atlanticare holding that under federal law MassHealth could, and was required to, seek reimbursement directly from Medicare in cases of retroactive dual eligibility.  A true and accurate copy of the letter dated September 15, 2003, from EOHHS to AHS is attached hereto as Exhibit D.

29.    On October 14, 2003, CMS's fiscal intermediary denied this request to establish EOHHS as a qualified Medicare billing entity.  The fiscal intermediary indicated that although HCFA had the discretion to permit State Medicaid agencies to seek reimbursement directly from Medicare, it had declined to exercises that discretion.  The fiscal intermediary stated that

HCFA's regulations prohibit the payment of Medicare "benefits due to a provider to [anyone] other than the provider of services." The fiscal intermediary also asserted that "from a practical matter, it would be a complex and costly process to design and implement the necessary system changes to accommodate this request." A true and accurate copy of the letter dated October 14, 2003, from AHS to EOHHS is attached hereto as Exhibit E.

30.     On December 30, 2003, CMS responded to EOHHS's request from seven months earlier for clarification of SMDL #03-004. CMS took the position that the Medicare statute bars any request from reimbursement submitted by a State Medicaid agency. CMS stated as follows:

> If the state learns of the existence of a liable third party after the claim has been paid, the state must seek recovery from that liable third party (Section 1902(a)(25)(B) of the Social Security Act and implementing Federal Regulations at 42 CFR 433.139(d)). However, when the liable third party is Medicare, there is no statutory authority under Medicare to allow a state to seek recovery and be paid by Medicare. Medicare allows only providers to bill and be paid by Medicare. In this case, the state may timely request the provider to submit a bill timely to Medicare.

A true and accurate copy of the December 30, 2003, letter sent by CMS's Associate Regional Administrator to EOHHS is attached hereto as Exhibit F.

31.     Although CMS did not cite any statutory provision in support of its assertion that "only providers [may] bill and be paid by Medicare," it appears that CMS was construing 42 U.S.C. § 1395f(a), which states in part that Medicare "payment for services furnished an individual may be made only to providers of services. . . ."

32.     In March 2004, the Commonwealth filed a motion in state court to modify the declaratory judgment entered in Atlanticare on the ground that new information demonstrated that the Commonwealth could not seek reimbursement directly from Medicare, and that CMS construed federal law as allowing State Medicaid agencies to require providers to repay Medicaid and seek their own Medicare reimbursement, in cases where retroactive dual eligibility is established after the Medicaid program has already paid for the services. In support of the

motion, EOHHS submitted copies of SMDL #03-004 and of the subsequent correspondence
described above.

33.     The Commonwealth's motion to amend the <u>Atlanticare</u> judgment was denied by
the Massachusetts Superior Court on July 28, 2004.  The court found at page 6 of its decision
that the SJC's "carefully reasoned" interpretation of the federal Medicaid statute and regulations
was much more persuasive than "the broad and declaratory language" in CMS's SMDL #03-004.
At page 7, the court urged EOHHS "to force the issue with Medicare by demanding that it pay
the funds for which it is liable."  A true and accurate copy of this Memorandum and Order is
attached hereto as <u>Exhibit G</u>.

34.     On February 2, 2005, EOHHS wrote to CMS, asking for help in solving the
dilemma creating by the inconsistency between (i) the SJC's <u>Atlanticare</u> holding that, in cases
where MassHealth has already paid a provider and now must obtain reimbursement from
Medicare, federal law requires MassHealth (or the Massachusetts state agency that administers
the MassHealth program) to seek Medicare reimbursement itself and bars MassHealth from
requiring providers to do so on its behalf, and (ii) CMS's position that in such cases MassHealth
may not seek Medicare reimbursement itself, but instead must force providers to do so on its
behalf.  EOHHS asked to meet with CMS to discuss possible options, including the option of
CMS reconsidering its prior denial of EOHHS's request for qualified billing entity status, "so
that [EOHHS] can directly bill Medicare, comply with the court order, and remove the burden of
filing claims from the providers."  A true and accurate copy of this letter dated February 2, 2005,
from EOHHS to CMS's Regional Administrator is attached hereto as <u>Exhibit H</u>.

35.     CMS responded on June 16, 2005.  CMS did not offer any solution.  Instead,
CMS reiterated its position "that there is no statutory authority for reimbursing Medicaid directly
for services rendered to Medicare beneficiaries."  A true and accurate copy of this letter dated

June 16, 2005, from CMS's Associate Regional Administrator to EOHHS is attached hereto as Exhibit I.

36.     On December 15, 2005, representatives of EOHHS met with CMS Region I Associate Regional Manager Richard McGreal and other representative of CMS.  The EOHHS representatives asked for help from CMS in solving the dilemma created by the inconsistency between the SJC's holding and order in Atlanticare, and CMS's position that MassHealth may not seek reimbursement from Medicare.  Once again, CMS did not offer any solution.

**CMS's Position that Medicaid Programs May Not Seek Reimbursement From Medicare Because They Are Not Providers Has Repeatedly Been Rejected, and Never Been Affirmed, By the Courts.**

37.     At least three different courts have held that CMS's position – that there is no statutory authority for reimbursing a State Medicaid program directly for services rendered to Medicare beneficiaries – cannot be squared with the Medicaid statute.  See Atlanticare, 439 Mass. at 11-13; NYDSS, 846 F.2d at 133-134; Michigan Dept. of Social Services v. Shalala, 859 F.Supp. 1113, 1117-1118 (W.D.Mich. 1994).  These courts held that, in order to harmonize the Medicare provision for reimbursement of providers (in 42 U.S.C. § 1395f(a)) with the Medicaid payor of last resort requirement and obligation to seek reimbursement from any liable third party (in 42 U.S.C. § 1396a(a)(25)(A)&(B)), one must construe the entire statutory scheme as allowing state Medicaid agencies to seek and obtain reimbursement directly from Medicare.  Id.

38.     In the words of the United States Court of Appeals for the Second Circuit, it is improper "tunnel vision" to approach this issue by looking only at the Medicare statute and ignoring the requirements of the Medicaid program.  NYDSS, 846 F.2d at 133.  As the Second Circuit explained:

> It is illogical to suggest … that the statutory and regulatory scheme of Medicare abrogates the principal that "Medicaid is the payer of last resort" and renders unenforceable the Medicaid statutes requiring states to recover from all responsible third parties (including the Medicare program).

NYDSS, 846 F.2d at 134.  The Second Circuit described the historic refusal by CMS and its predecessors to accept Medicare reimbursement claims from State Medicaid agencies as being "not only inconsistent with the language of the Medicaid statute and its purpose, but also in defiance of common sense."  Id. (citation omitted).  The Massachusetts SJC and the United States District Court for the Western District of Michigan have both agreed with the Second Circuit.  Atlanticare, 439 Mass. at 13; Michigan Dept. of Social Services, 859 F.Supp. at 1118.

39.     As these courts have held, MassHealth may seek reimbursement directly from the Medicare program.

**CMS Wrongly Denied Four Specific Claims by EOHHS for Medicare Reimbursement.**

40.     As previously suggested by the Massachusetts Superior Court, on December 21, 2006, EOHHS submitted four test claims for Medicare reimbursement to NGS (then AHS), which is CMS's Medicare Part A fiscal intermediary for Massachusetts.  Each of the four claims involved an individual who received inpatient hospital care that was paid for by the MassHealth program, and who subsequently was granted retroactive Medicare Part A coverage under which Medicare was liable for the medical assistance that had already been paid by MassHealth.  In each case, Medicare Part A has never paid for the hospital care for which MassHealth seeks reimbursement.  EOHHS submitted these four claims with a cover letter that summarized the factual and legal history set forth above, and that asked for "a final decision regarding whether CMS will permit MassHealth to submit claims for Medicare reimbursement directly to CMS's fiscal intermediary."  EOHHS sent copies of these claims and this cover letter to regional Medicare and Medicaid officials of CMS.  True and accurate copies of the letter dated December 21, 2006, from EOHHS to AHS, and redacted copies of the four claim forms enclosed with that letter (with the last names, addresses, month and day of birthdates, and social security numbers of each patient blacked out), are attached hereto as Exhibit J.

41.     On January 12, 2007, NGS – acting on behalf of CMS and the Secretary –

returned all four of these claims to EOHHS, with a form letter stating that NGS was "unable to

process the claim" because EOHHS is "not a participating a provider."  NGS sent EOHHS this

form letter, copies of EOHHS's letter dated December 21, 2006, and the four claims it had

submitted, and various computer printouts generated by NGS concerning each of the four claims.

EOHHS received this letter and the enclosures on January 16, 2007.  True and accurate copies of

the letter dated January 12, 2007, from NGS to EOHHS, and redacted copies of the materials

enclosed therewith (with the last names, addresses, month and day of birthdates, and social

security numbers of each patient blacked out), are attached hereto as Exhibit K.

42.     On January 17, 2007, NGS – again acting on behalf of CMS and the Secretary –

sent a duplicate copy of the same form letter to EOHHS, enclosing duplicate copies of EOHHS's

letter dated December 21, 2006, and the four claims it had submitted, but not enclosing the

additional computer printouts previously provided by NGS.  EOHHS received this letter and the

enclosures on January 19, 2007.  True and accurate copies of the letter dated January 17, 2007,

from NGS to EOHHS, and redacted copies of the materials enclosed therewith (with the last

names, addresses, month and day of birthdates, and social security numbers of each patient

blacked out), are attached hereto as Exhibit L.

43.     On February 14, 2007, EOHHS wrote to NGS seeking clarification of the two

form letters by which NGS returned these four claims to EOHHS.  Among other things, EOHHS

asked NGS to "state in writing whether the letters constitute final decisions by CMS and, if not,

what steps should MassHealth take to file an administrative appeal."  EOHHS also asked that

"[i]f such an administrative appeal is governed by particular regulations or rulings, please let us

know what they are."  EOHHS sent copies of this letter to regional Medicare and Medicaid

officials of CMS.  A true and accurate copy of the February 14, 2007, letter from EOHHS to NGS is attached hereto as Exhibit M.

44.     Although CMS has by regulation established procedures for administrative appeals of various Medicare eligibility, coverage, or payment decisions, none of these procedures apply to Defendants' refusal to accept a claim for Medicare reimbursement submitted by a State Medicaid agency.

45.     NGS never responded to the letter dated February 14, 2007, from EOHHS.  On information and belief, NGS did in fact receive this letter, but it either chose or was directed by CMS not to respond.

46.     Since EOHHS never received any response from NGS, on March 15, 2007, EOHHS filed requests for reconsideration with respect to each of the four claims described above.  EOHHS filed these requests and an explanatory cover letter with MFS, because MFS has been hired to process and decide Medicare Part A coverage appeals for Massachusetts.  EOHHS sent copies of this letter and of the requests for reconsideration to regional Medicare and Medicaid officials of CMS.  True and accurate copies of the March 15, 2007, letter from EOHHS to MFS, and redacted copies of the accompanying requests for reconsideration (with the individual patients' Medicare numbers and last names blacked out), are attached hereto as Exhibit N.

47.     On March 26, 2007, representatives of EOHHS met with CMS Region I Associate Regional Manager James Bryant and other representative of CMS.  The EOHHS representatives asked for help from CMS in getting a final, appealable decision on the issue of whether CMS will permit MassHealth to submit claims for Medicare reimbursement.  The CMS representatives indicated that the issue was being discussed at high levels within CMS, but that they could not

tell EOHHS whether CMS either would or would not permit MassHealth to submit Medicare reimbursement claims.

48.     On May 21, 2007, MFS – acting on behalf of CMS and the Secretary – sent four letters to EOHHS stating that each of the four requests for reconsideration "has been dismissed." MFS wrote that "[b]ecause there was not a Redetermination (first level appeal) conducted by National Government Services (formerly known as Associated Hospital Services), MAXIMUS Federal Services . . . does not have jurisdiction to issue a reconsideration in this case."  MFS stated that EOHHS "must first appeal to National Government Services."  True and accurate redacted copies of these four letters from MFS to EOHHS dated May 21, 2007 (with the individual patient's HIC numbers and last names blacked out) are attached hereto as Exhibit O.

49.     This procedural guidance from MFS was incorrect as a matter of law.  Since NFS had refused to process EOHHS's claims, and had never made any Initial Determination, the normal process for seeking a Redetermination does not apply in the circumstances of this case. By law, the so-called "Redetermination" appeals process only applies after a party receives an "Initial Determination."  42 C.F.R. § 405.710.  However, CMS has promulgated a regulation which expressly provides that the category of "Initial Determinations" does not include any decision regarding "whether an . . . agency meets the conditions for participation in the [Medicare] program."  42 C.F.R. § 405.705(b).  Since NGS refused to process these four claims on the ground that EOHHS is not a provider and therefore purportedly does not meet the conditions for participation in the Medicare program, EOHHS was neither obligated nor able to seek a Redetermination from NGS before filing its requests for reconsideration with MFS.

50.     On July 27, 2007, EOHHS wrote directly to CMS regarding the requests for reconsideration that had been "dismissed" by MFS.  EOHHS asked that, if CMS is continuing to take the position that it will not process Medicare reimbursement claims submitted by

MassHealth, CMS state so in writing in a final decision that would "allow MassHealth to seek judicial review." A true and accurate copy of this July 27, 2007, letter from EOHHS to CMS is attached hereto as <u>Exhibit P</u>.

51.     Also on July 27, 2007, EOHHS wrote to MFS, asking that MFS reverse its dismissal of the requests for reconsideration and proceed to reconsider the four claims at issue. EOHHS noted that the "Redetermination" appeals process before NGS does not apply in the circumstances of this case. EOHHS also noted that it had never received any response from NGS to the February 14, 2007, letter in which EOHHS sought guidance as to what appeals process were available, if any. EOHHS sent copies of this letter to regional Medicare and Medicaid officials of CMS. A true and accurate copy of this July 27, 2007, letter from EOHHS to MFS is attached hereto as <u>Exhibit Q</u>.

52.     On August 13, 2007, MFS – acting on behalf of CMS and the Secretary – sent four letters to EOHHS stating that MFS "declined to vacate" each of the four "reconsideration dismissal[s]." MFS conceded that EOHHS had "correctly noted" that the so-called "redetermination" appeals process did not apply in the circumstances of this case. MFS nonetheless reiterated that, because NGS never issued an initial determination or a redetermination, MFS "has no authority to review this matter." EOHHS has received no other response to the separate letter it sent on July 27, 2007, to CMS. True and accurate redacted copies of these four letters from MFS to EOHHS dated August 13, 2007 (with the individual patient's HIC numbers and last names blacked out) are attached hereto as <u>Exhibit R</u>.

53.     MFS stated in its August 13, 2007, letters that its "decision on whether to reopen is final and not subject to appeal," and that EOHHS has "no further appeal rights in this case." <u>See</u> Exhibit R. By these statements, MFS – acting on behalf of CMS and the Secretary – has

made clear that EOHHS has exhausted its administrative remedies and may now seek judicial review.

54.     Although MFS has stated that it lacks "jurisdiction" and "authority" even to consider EOHHS's requests for reconsideration, it also stated in its August 13, 2007, letters to EOHHS that "reimbursing MassHealth for payments already made on behalf of a dually eligible beneficiary after providing retroactive reimbursement for the same services that MassHealth reimbursed would permit double billing of Medicare." This statement has no basis in fact. The four test claims submitted by EOHHS sought Medicare Part A reimbursement for hospital services that had been paid for by MassHealth prior to the retroactive determination that each patient was eligible for Medicare Part A coverage. In none of these four cases has Medicare provided "retroactive reimbursement for the same services that MassHealth reimbursed."

## Count One – Denial of Claims In Violation of Law.

55.     The Commonwealth of Massachusetts incorporates the previously numbered paragraphs, which set forth the basis for this Count.

56.     Defendants' refusal to accept and process the four claims for Medicare Part A reimbursement that were submitted by EOHHS on December 21, 2006, constitutes "agency action" reviewable by this court. See 5 U.S.C. §§ 551, 702. The Commonwealth has been adversely affected or aggrieved by Defendants' refusal to accept and process these four claims.

57.     Defendants' refusal to accept and process these four claims was arbitrary, capricious, in excess of Defendants' statutory authority, in violation of the Commonwealth's statutory rights, without observance of procedure required by law, or otherwise not in accordance with law. It should therefore be held unlawful, and Defendants' findings and conclusions should be set aside, pursuant to 5 U.S.C. § 706.

58.     Defendants' refusal to process these four claims was in effect a denial of these claims.  That denial was unlawful, and should be reversed.

### Count Two – Declaratory Judgment.

59.     The Commonwealth of Massachusetts incorporates the previously numbered paragraphs, which set forth the basis for this Count.

60.     There is an actual controversy between the Commonwealth of Massachusetts and Defendants regarding whether the state agency that administers the Massachusetts Medicaid program may file claims for reimbursement with Medicare, even though that agency is not a "provider" of medical assistance within the meaning of the federal Medicare statute.

61.     The Commonwealth of Massachusetts has been damaged by Defendants' refusal to permit EOHHS to submit reimbursement claims to Medicare.  MassHealth is paying several million dollars per year for care and services that by law should be paid for by Medicare. Defendants' unlawful refusal to permit EOHHS to file claims for Medicare reimbursement has made it impossible for to obtain the reimbursement from Medicare to which the MassHealth program is entitled by federal law.

**Prayer for Relief.**

WHEREFORE, the Commonwealth of Massachusetts respectfully urges the Court, after a hearing on the merits, to:

1.      Order the defendants to accept, process, approve, and pay the four claims for reimbursement submitted to Medicare by EOHHS on or about December 21, 2006;

2.      Enter a declaration that the agency of the Commonwealth of Massachusetts responsible for administering the Massachusetts Medicaid program may submit claims for reimbursement from Medicare, and that Defendants must accept and process such claims even though the Massachusetts Medicaid program is not a provider of health care services; and

3.      Grant such other relief as is proper.

MARTHA COAKLEY
*ATTORNEY GENERAL*

  /s/ Kenneth W. Salinger   .
Kenneth W. Salinger (BBO # 556967)
Assistant Attorney General
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA  02108
(617) 727-2200 ext. 2075

October 10, 2007

**VERIFICATION**

I, Thomas Dehner, state under the pains and penalties of perjury as follows:

1.      I am the Medicaid Director for the Massachusetts Executive Office of Human

Services.

2.      I have read the foregoing Verified Complaint.

3.      The factual allegations of the Verified Complaint are true based on my own

personal knowledge, or are based upon records maintained in the usual course of business by the

Massachusetts Medicaid program, which allegations I believe to be true.


   /s/ Thomas Dehner   .
Thomas Dehner



Signed and sworn to me this 10th day of October, 2007.


   /s/ Barbara L. Wexler   .
Notary Public
My commission expires:  12/27/13