UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF MASSACHUSETTS    )
                                 )
            v.                   )   C.A. No. 07-11930-MLW
                                 )
                                 )
KATHLEEN SEBELIUS in her         )
official capacity as Secretary   )
of Health and Human Services,    )
ET AL,                           )
      Defendants.                )

MEMORANDUM AND ORDER

WOLF, D.J.                                    December 31, 2009

        This memorandum is based upon the transcript of the decision

rendered orally on September 21, 2009, in which the court allowed

defendants' Motion to Dismiss. This memorandum adds citations,

deletes some colloquy, and clarifies some language.

* * *

I.  INTRODUCTION

        This case arises out of the Commonwealth of Massachusetts'

attempts to obtain reimbursement from Medicare for coverage

originally provided by the Massachusetts Medicaid program.  The

plaintiffs  are  the  Commonwealth  of  Massachusetts  and  the

Massachusetts  Executive  Office  of  Health  and  Human  Services,

("EOHHS"),  the  state  agency  responsible  for  administering  the

Massachusetts Medicaid program known as MassHealth. The defendants

are Kathleen Sebelius in her official capacity as Secretary of

Health and Human Services for the United States (the "Secretary"),

Charlene Frizzera, in her official capacity as Acting Administrator

of the Centers for Medicare and Medicaid Services ("CMS"), National Government Services, Inc. ("NGS"), the fiscal intermediary hired by CMS to process Medicare Part A reimbursement claims in Massachusetts, and MAXIMUS Federal Services, Inc. ("MFS"), a qualified independent contractor hired by CMS to conduct second-level appeals of Medicare Part A reimbursement claims in Massachusetts. In general, I may refer to the plaintiffs as "Massachusetts" and the defendants as "The United States," or the plaintiffs as "Medicaid" and the defendants as "Medicare."

II.  FACTS AND PROCEDURAL BACKGROUND

This case is essentially about how Medicare is to pay for medical services under certain circumstances. For various reasons, some individuals receive medical treatment paid for by Medicaid, but are later retroactively determined to be eligible for Medicare. Such cases are known as matters of "retroactive dual eligibility." Medicaid is supposed to be a payor of last resort. See Arkansas Dept. of Health and Human Services v. Ahlborn, 547 U.S. 268, 291 (2006) (construing 42 U.S.C. §1396a(a)(25)). The Medicaid statute and regulations require state Medicaid agencies to seek reimbursement whenever they pay for services covered by any liable third party. See 42 U.S.C. §1396a(a)(25)(B); 42 C.F.R. §433.139(e)(2).  The issue here is whether Medicare is a "liable third party" under the circumstances presented by this case.

As I will explain, Medicare is barred by its own statutes and

regulations, with some exceptions not relevant here, from paying anyone other than a provider of medical services. See 42 U.S.C. §1395f(a); 42 C.F.R. §424.33. Medicaid is not a provider of medical services. See 42 U.S.C. §1395x(u), (defining "provider of services"). Therefore, when Massachusetts Medicaid attempted to collect reimbursement from Medicare for retroactive dual eligibles, Medicare refused to pay. This was not a particular problem before 2003. Before 2003, Massachusetts Medicaid was able to seek reimbursement from providers themselves and the providers had standing to seek reimbursement from Medicare. However, in 2003, the Supreme Judicial Court of the Commonwealth of Masachusetts held in Atlanticare Medical Center v. Commissioner of the Division of Medical Assistance, 439 Mass. 1 (2003), that in cases of retroactive dual eligibility, Medicaid may not sue medical providers directly, but must instead sue the third-party payor. In reaching this conclusion, the Supreme Judicial Court wrote that, despite the parties' agreement that Medicaid could not recover payments made from Medicare, it was not "persuaded that it is impossible" for Medicaid to do so. Id. Medicare was not a party, and did not otherwise participate, in Atlanticare.

In this case, Massachusetts is suing for declaratory and injunctive relief to require Medicare to pay Massachusetts Medicaid directly and for Medicare to process four test claims for reimbursement filed by Massachusetts Medicaid. The United States

has moved to dismiss on the basis that the complaint fails to state a claim on which relief may be granted. The plaintiffs filed a cross-motion for summary judgment.   As indicated earlier, the motion to dismiss is being allowed pursuant to Federal Rule of Civil Procedure 12(b)(6).   Therefore, plaintiff's request for summary judgment is moot.

III.   STANDARD OF REVIEW

With regard to the motion to dismiss under Rule 12(b)(6), the court must "take all factual allegations as true and [] draw all reasonable inferences in favor of the plaintiff." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007). The court must "neither weigh[] the evidence nor rule[] on the merits." Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996). A motion to dismiss should be denied if a plaintiff has shown "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007); see also Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d at 95-96 (1st Cir. 2007) (applying the Bell Atl. standard to a claim under the Private Securities Litigation Reform Act); Morales-Tanon v. Puerto Rico Elec. Power Authority, 524 F.3d 15, 18 (1st Cir. 2008) (applying the Bell Atl. standard to a claim under 42 U.S.C. §1983).

IV.   DISCUSSION

The material facts or allegations are not in dispute. Medicare provides Federal health insurance for elderly and certain disabled

individuals. Medicare is overseen by the Center for Medicare and Medicaid Services, a division of the Department of Health and Human Services. CMS pays Medicare claims through fiscal intermediaries, usually insurance companies, to whom CMS contracts claims processing.

Medicaid is funded by both the Federal and state governments. It is administered by the states and provides health insurance for America's poor. The Massachusetts Medicaid program is administered at the state level by EOHHS. The Massachusetts Medicaid program is, as explained earlier, known as MassHealth. Some individuals known as "dual eligibles" are covered by both Medicare and Medicaid. In the case of dual eligibles, Federal law generally requires that Medicare bear the cost of medical services because Medicaid is the payor of last resort.  See Arkansas Dept. of Health and Human Services, 547 U.S. at 291.

However, Medicare and Medicaid eligibility determinations may occur at different times. Relevant to this case are instances in which Medicaid pays for medical services for an individual, but a later determination establishes the individual to be retroactively eligible for Medicare coverage for the services for which Medicaid has already paid. Ordinarily, when Medicaid pays a claim and later learns that a third party is liable for payment, Medicaid must seek reimbursement for the claim to the extent of such legal liability, so long as seeking recovery is cost effective.  See 42 U.S.C.

§1396a(a)(25)(B); 42 C.F.R. §433.139(e)(2). However, when the third party is Medicare, the situation is complicated by Medicare provisions requiring that payment for services furnished an individual be made only to providers of services. <u>See</u> 42 U.S.C. §1395f(a); 42 C.F.R. §424.33. Medicaid is not a provider of services under the Medicare statute, which states that, "[t]he term 'provider of services' means a hospital, critical access hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency, hospice program, or, for purposes of section 1395f(g) and section 1395n(e) of this title, a fund." 42 U.S.C. §1395x(u).

Further complicating matters is the Supreme Judicial Court's ruling in <u>Atlanticare</u>, which, as explained earlier, held that in cases of retroactive dual eligibility, Massachusetts Medicaid may not sue medical providers directly, but must instead sue the third-party payor even if that third-party payor is Medicare. 439 Mass. at 11. No longer able to obtain payment from providers, Massachusetts initiated a series of communications with Medicare in an attempt to obtain reimbursement in a manner consistent with the ruling in <u>Atlanticare</u>. Medicare has repeatedly informed Massachusetts Medicaid that it will not reimburse Medicaid for the dual eligibles because Medicaid is not a provider of medical services. This case was filed as a result of that impasse.

The plaintiff's allegations fail to state a claim upon which

relief can be granted because the most relevant statute and
implementing regulations require that Medicare make payments for
services to providers only, and Medicaid is not a provider. More
specifically, 42 U.S.C. §1395f(a) states in pertinent part that
"[p]ayment for services furnished an individual may be made only to
providers of services." Various statutory provisions, including 42
U.S.C. §1395hh, expressly provide for the issuance of any necessary
regulations.  42  U.S.C.  §1302(a)  provides  the  same.  Section
1395f(a)(1) is more specific with regard to this case. It states
that the Secretary of Health and Human Services may by regulation
prescribe  which  persons  can  submit  claims  for  payment  for
services.[1] The regulation implementing Section 1395f(a)(1) is 42
C.F.R. §424.33, which states: "All claims for services of providers
and all claims by suppliers and nonparticipating hospitals must be
– (a) Filed by the provider, supplier or hospital; and (b) Signed
by the provider, supplier or hospital unless CMS instructions waive

---

[1]Section 1395f(a) provides:

> Except as provided in subsections (d) and (g) of
> this section and in section 1395mm of this title,
> payment for services furnished an individual may
> be made only to providers of services which are
> eligible therefor under section 1395cc of this
> title and only if– (1) written request, signed by
> such individual, except in cases in which the
> Secretary finds it impracticable for the
> individual to do so, is filed for such payment in
> such form, in such manner, and by such person or
> persons as the Secretary may by regulation
> prescribe. . . .

this requirement."

The Secretary interprets the statute and regulations as prohibiting payments from Medicare to Medicaid in the circumstances of this case because Medicaid is not a provider of the services at issue. This interpretation of the statute appears to be correct and, in any event, is entitled to deference by the court pursuant to <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel</u>, 467 U.S. 837 (1984), and its progeny.

I will describe my understanding of <u>Chevron</u> and its progeny in some detail because I think the answer to the issue at the heart of this case is influenced by the nature of the questions that the court must properly decide. <u>Chevron</u> instructs that when a court reviews an agency's construction of a statute it administers, the court is confronted with two questions:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court [may] not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.

<u>Chevron</u>, 467 U.S. at 842-43.  More recently the Supreme Court has stated that:

> [T]he legal question before us is whether the Agency's interpretation of the statute is lawful. This Court has previously said that, if the statute speaks clearly "to the precise question at issue,"

> we "must give effect to the unambiguously expressed
> intent of Congress." <u>Chevron</u>, 467 U.S., at 842-843,
> 104 S. Ct. 2778. If, however, the statute "is
> silent or ambiguous with respect to the specific
> issue," we must sustain the Agency's interpretation
> if it is "based on a permissible construction" of
> the Act. <u>Id.</u>, at 843, 104 S.Ct. 2778. Hence we must
> decide  (1)  whether  the  statute  unambiguously
> forbids the Agency's interpretation, and, if not,
> (2) whether the interpretation, for other reasons,
> exceeds the bounds of the permissible. <u>Ibid.</u>; <u>see
> also</u> <u>United States v. Mead Corp.</u>, 533 U.S. 218,
> 227, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001).

<u>Barnhart v. Walton</u>, 535 U.S. 212, 217-18 (2002) (citing <u>Chevron</u>,

467 U.S. at 842-843 and <u>United States v. Mead Corp.</u>, 533 U.S. 218,

227 (2001)).

Chevron deference is appropriate only where (1) Congress

expressly left an issue open for the agency to decide (explicit

authority) or (2) when it is apparent from "the agency's generally

conferred authority and other statutory circumstances that Congress

would expect the agency to be able to speak with the force of law

when it addresses ambiguity in the statute or fills a space in the

enacted law, even one about which Congress did not actually have an

intent as to a particular result" (implicit authority). <u>Mead</u>, 533

U.S. at 229 (citation and internal quotation marks omitted).

Implicit authority is often, but not always, indicated by "express

Congressional authorization to engage in a process of rule making

or adjudication that produces regulations or rules for which

deference is claimed." <u>Id.</u>

Where an agency regulates pursuant to explicit authority, "the

agency regulations are given controlling weight unless they are arbitrary, capricious or manifestly contrary to the statute." Chevron, 567 U.S. at 444 (footnote omitted). Where an agency regulates pursuant to implicit authority, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." Id. (footnote omitted).

Thus, Mead holds that formal agency interpretation generally is entitled to Chevron deference. However, as the First Circuit has noted, "the level of deference owing to informal agency interpretations is freighted with uncertainty." Doe vs. Leavitt, 522 F.3d 75, 79 (1st Cir. 2009) (citing Lisa Schultz Bressman, How Mead Has Muddled Judicial Review of Agency Action, 58 VAND. L. REV. 1443, 1457-69 (2005)). In particular, Mead "does not clarify the circumstances in which Congress should be deemed to have intended an informal agency interpretation to carry the force of law and, thus, attract Chevron deference."  Doe, 522 F.3d at 79 (citing Mead, 533 U.S. at 231).

Where an agency interprets its own regulations, its interpretation is controlling "unless 'plainly erroneous or inconsistent with the regulation.'" Auer v. Robbins, 519 U.S. 452, 460 (1997) (quoting Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359 (1989)).  The court's task:

> is not to decide which among several competing
> interpretations best serves the regulatory purpose.

> Rather, the agency's interpretation must be given
> controlling weight unless it is plainly erroneous
> or inconsistent with the regulation. In other words
> [the court] must defer to the Secretary's
> interpretation unless an alternative reading is
> compelled by the regulation's plain language or by
> other indications of the Secretary's intent at the
> time of the regulations's promulgation.

Thomas Jefferson University v. Shalala, 512 U.S. 504, 512 (1994) (citations and internal quotation marks omitted). H o w e v e r , deference is not accorded "to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice," because "[t]he deliberateness of such positions, if not indeed their authoritativeness, is suspect." Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 741 (1996) (citations and internal quotation marks omitted).

In this case, the statute seems to be clear and to support Medicare's position. Massachusetts Medicaid is seeking a payment from Medicare. A payment is being sought because of services that were provided to a Medicaid recipient later found eligible for Medicare. The statute, §1395f(a), states that payments must be made to the provider. It is undisputed that Medicaid is not a provider of services as defined in §1395x(u).

However, Massachusetts Medicaid asserts that the statute should be regarded as ambiguous in part because Medicaid is intended to be the payor of last resort. See Ahlborn, 547 U.S. at 291. In addition, Medicaid argues that it is seeking a "reimbursement" rather than a payment. Therefore, it contends that

the statutory provision on which Medicare relies does not cover the situation presented in the instant case. More specifically, Medicaid contends that the statute does not require that it be a provider of services to be reimbursed for payments it made to dual eligibles.

Assuming, without finding, that these arguments create or describe an ambiguity, the court in this case must defer to the Secretary's interpretation of the statute and related regulation. The statute provides for the issuance of regulations. See 42 U.S.C. §§1302(a), 1395f(a)(1), 1395hh. Section 1395f(a)(1) explicitly delegates to the Secretary the authority to, by regulation, prescribe which persons can submit claims for payment for services. Thus, the Secretary is generally authorized to interpret the statute, as necessary, in regulations and specifically authorized to decide to whom Medicare may make payments. See Mead, 533 U.S. at 229. The Secretary has addressed the relevant question formally in 42 C.F.R. §424.33, which states that "[a]ll claims for services by a provider must be filed by the provider." The statute does not forbid this interpretation of §1395f(a). Rather, the regulation and the Secretary's interpretation of it are consistent with the language of §1395f(a), which states that payment "may be made only to providers of services." The Secretary has previously taken a position compatible with its position in this case. See Letter from Norma E. Burke, Associate Regional Administrator, Department

of Health and Human Services to Ruth A. Bourquin, Assistant
Attorney General for the Commonwealth of Massachusetts (March 1,
1991) (attached as Exhibit A to the Complaint). From at least 1991,
see id., until the Atlanticare case was decided by the Supreme
Judicial Court in 2003, it seems to have been accepted in
Massachusetts, as well as in the rest of the states,[2] that Medicaid
programs were not entitled to direct reimbursement by Medicare for
payments made to dual eligibles by Medicaid. The Secretary's
interpretation of the relevant regulation is neither plainly
erroneous nor inconsistent with the regulation. Therefore, I give
her interpretation of the regulation controlling weight. See Thomas
Jefferson Univ., 512 U.S. at 512.

Here, Congress explicitly authorized the Secretary to decide
who may file a request for Medicare payments. See 42 U.S.C.
§1395f(a)(1). The Secretary exercised this authority in
promulgating 42 C.F.R. §424.33, which states that "[a]ll claims for
services of providers and all claims by suppliers and
nonparticipating hospitals must be – (a) Filed by the provider,
supplier or hospital; and (b) Signed by the provider, supplier or
hospital unless CMS instructions waive this requirement." Because
this regulation interpreting the statute was promulgated pursuant
to an express delegation of authority, I must give it "controlling

---

[2]New Hampshire is a possible exception. See Petition of Maxi
Drug, 154 N.H. 651, 657-62 (2006)

13

weight" unless it is "arbitrary, capricious or manifestly contrary to the statute." Chevron, 567 U.S. at 444 (footnote omitted).  I find that §424.33 is not arbitrary or capricious.  Rather, §424.33 is consistent with the statutory command of 42 U.S.C. §1395f(a)(1) that Medicare payments be made only to providers.  Thus, 42 C.F.R. §424.33, which requires that requests for Medicare payments be made by providers, controls this case.[3]

In reaching this conclusion, I recognize that 42 U.S.C. §1396a(a)(25)(A) requires that Medicaid ascertain the liability of third parties. Section 1396a(a)(25)(B) requires that Medicaid, in any case where such liability is found, seek reimbursement from them. However, Section 1396a(a)(25)(B), I find, does not create any third-party liability.  Rather, it only addresses what Medicaid must do if such liability is determined to exist based on other sources.

There are no other cases directly on the point. However, there are analogous cases whose reasoning is consistent with the

---

[3]Even if Congress did not expressly delegate to the Secretary the authority to decide whether Medicaid would be entitled to obtain reimbursement from Medicare for payments to dual eligibles, Congress implicitly granted the Secretary such authority by delegating to her the general rule-making authority. See Mead, 533 U.S. at 229 ("We have recognized a very good indicator of delegation meriting Chevron treatment in express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed.") (citation omitted).  The regulation, §424.33, is not an unreasonable interpretation of the statute. Therefore, the court may not substitute an alternative construction of the statute.  Chevron, 462 U.S. at 844.

conclusion that I have reached. Such cases include two decided after Atlanticare. See Connecticut Department of Social Services v. Leavitt, 428 F.3d 138, 146-47 (2d Cir. 2005); New York v. Sebelius, 2009 WL 1834599 (N.D.N.Y. June 22, 2009). In Connecticut Department of Social Services, the Second Circuit, in a different factual context, found that several clear statements in the Medicare code and regulations require that requests for payments be made only by providers. See 428 F.3d at 145. Medicaid, having made payments that should have been paid by Medicare, sought to file Medicare claims on behalf of Medicare beneficiaries. Id. at 144. The court deferred to Medicare's interpretation of its own regulations, as well as statutory authority, and held that neither the Medicare beneficiaries nor Connecticut acting on their behalf could file claims directly with Medicare's financial intermediaries. See id. at 145-46.

Similarly, in New York v. Sebelius, the Social Security Administration made errors that prevented certain individuals from becoming eligible for Medicare. 2009 WL 1834599, at *3. Some of these individuals obtained Medicaid coverage at an alleged cost to New York of almost $2,000,000,000. Id. at *4. New York attempted to recover this sum directly from Medicare. Id. at *8. The court, construing Connecticut Department of Social Services and also New York State Dept. of Social Services v. Bowen, 846 F.2d 129 (2d Cir. 1988), held that although 42 U.S.C. §1396a(a)(25)(B) clearly

15

imposes a duty on the state to seek Medicaid reimbursement, it does not entitle the state to wholesale reimbursement from Medicare. 2009 WL 1834599, at *8.

Massachusetts Medicaid relies on 42 U.S.C. §1395f(d)(2) to argue that there is a distinction, recognized in the statute, between a "payment" and a "reimbursement." 42 U.S.C. §1395f(d)(2) allows individuals to file for benefits for emergency services received from a hospital that does not participate in the Medicare program. It makes an express exception to the general rule that only a provider may request and receive any payment. There is, however, no comparable statutory exception that covers Medicaid in the circumstances of this case.

Similarly, I find that New York State Department of Social Services, supra, is materially different from this case. In that case, direct payments from Medicare to Medicaid were not involved. Rather, New York Medicaid had attempted to request a Medicare hearing on behalf of individuals who had been denied coverage for skilled nursing care. See New York State Dept. of Social Services, 846 F.2d at 132. Medicare denied the request on the ground that New York Medicaid was neither a party nor a representative of a party. Id. The court held that the United States was suffering from "tunnel vision" in viewing the Medicare statute in isolation from the Medicaid statute. Id. at 133. Even though the Medicare statute pertaining to administrative appeals did not explicitly allow

Medicaid to appeal on behalf of individuals, the court held that the principle that Medicaid is the payor of last resort should control. See id. However, as New York v. Sebelius points out, New York State Department of Social Services did not require that the court "scrap the administrative and statutory framework for reimbursement and permit a free-floating right to aggregate compensation from Medicare." 2009 WL 1834599, at *8.

The Supreme Judicial Court's decision in Atlanticare does not qualify the conclusion I have reached. As indicated earlier, the United States was not a party to Atlanticare and did not otherwise participate in the case. The Supreme Judicial Court found that Medicaid could not sue providers for reimbursement for payments made to dual eligibles. Atlanticare, 439 Mass. at 14-15. The Supreme Judicial Court wrote that it was not persuaded that it would be impossible for Medicaid to obtain reimbursement from Medicare. Id. at 11. However, having the benefit of briefing of this issue by the parties, particularly the United States, I am persuaded that Medicaid is not entitled to sue Medicare for reimbursement. See Connecticut Department of Social Services, 428 F.3d at 145-46; New York v. Sebelius, 2009 WL 1834599, at *8. Therefore, the defendants' motion to dismiss is being allowed.

As an alternative to its request that it prevail on its claim that it is entitled to recover from Medicare, Massachusetts Medicaid asks that I issue a declaratory judgment finding that, in

the circumstances of this case, providers have a duty to seek payment from Medicare and then reimburse Medicaid. I find that it is not necessary or appropriate to issue such a declaration. The providers, who evidently cared deeply enough to have brought the Atlanticare case, were not sued by Massachusetts Medicaid or otherwise made parties to this case. It was not asserted that they were indispensable parties to it. They did not seek to intervene. I have not heard from them. It is not necessary for me to decide the issue of whether Medicaid can recover from providers payments made to dual eligibles which was addressed in Atlanticare.  In the present posture of this case, it is not appropriate for me to decide it.

I understand that this matter has serious consequences for the parties and that the Commonwealth of Massachusetts has a dilemma. It may be that there should be amendments to the relevant statutes. Alternatively, as the United States and the Commonwealth of Massachusetts agree that Massachusetts Medicaid cannot recover from Medicare payments it has made to retroactive dual eligibles, perhaps the parties could jointly bring a case which would provide the Supreme Judicial Court an opportunity to reconsider its assumption in Atlanticare that Massachusetts Medicare has an alternative to recovering from providers. However, my responsibility is to decide the case and controversy before me and I have done that.

V.   ORDER

In view of the foregoing, it is hereby ORDERED that:

1.  Defendants' Motion to Dismiss (Docket No. 10) is ALLOWED.

2.  Plaintiff's Cross-Motion for Summary Judgment (Docket No. 12) is MOOT.


                                        /s/ MARK L. WOLF
                                    UNITED STATES DISTRICT JUDGE